**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID SAMUEL, individually and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | Case No. _____ |
| *Plaintiff*, | ) | |
| | ) | Principal case pending in the |
| v. | ) | United States District Court for the |
| | ) | Southern District of New York, |
| JOHN DOES, | ) | Case No. 1:18-cv-01593 |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA

Cboe Global Markets, Inc. ("Cboe") respectfully moves this Court pursuant to Federal Rule of Civil Procedure 45(d)(3) for an Order quashing the subpoena for documents ("the Subpoena") (attached hereto as Exhibit 1) served on it by Plaintiff ("Samuel") in connection with a lawsuit filed in the Southern District of New York in which Cboe is not a party. *See Samuel v. Does*, No. 1:18-cv-1593 (S.D.N.Y. filed Feb. 21, 2018). The Subpoena seeks a variety of transaction information from Cboe that Samuel asserts is necessary to identify John Doe entities named as defendants in Samuel's complaint.

This Court is the appropriate venue to adjudicate Cboe's motion to quash. Samuel represented to the Southern District of New York that this Court is the appropriate district of compliance, and the Southern District of New York expressly noted that representation in its order authorizing Samuel to serve the Subpoena. Moreover, even setting aside Samuel's express consent and the issuing court's order, this Court has venue to decide the motion under the Federal Rules. Under Rule 45(d)(3)(A), a motion to quash must be filed "in the district where compliance is required." The "district where compliance is required" is the district where compliance is *properly*

required by Rule 45(c). Cboe is headquartered and regularly transacts business in Chicago, Illinois, and Chicago is therefore the proper "place of compliance" under Rule 45(c).

The Subpoena should be quashed for two reasons. First, the Subpoena identifies an improper place of compliance. In direct contradiction of the representation acknowledged by the issuing court, Samuel issued the Subpoena identifying a law office in Radnor, Pennsylvania as the place of compliance, rather than the Northern District of Illinois. Therefore, the Subpoena is inconsistent with Samuel's own statements in the Southern District of New York; inconsistent with the Southern District of New York's order permitting the Subpoena to be issued; and inconsistent with Rule 45(c), because it seeks compliance more than 100 miles from Cboe's headquarters and principal place of business. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii).

Second, the subpoena places an undue burden on Cboe. Samuel's lawsuit is only one of eighteen lawsuits to date that are the subject of a pending motion before the Judicial Panel on Multidistrict Litigation ("JPML") for transfer and coordination or consolidation. Like Samuel, plaintiffs in the cases in which Cboe is not named as a defendant have either moved to serve a subpoena on Cboe or have represented they will seek to serve a subpoena or discovery request on Cboe. All but two parties that have filed responses to the transfer motion support consolidation, and the JPML will rule soon; a hearing is scheduled for May 31, and a ruling expected shortly thereafter in early June. Until the JPML rules, and discovery can be efficiently coordinated, it is unduly burdensome to require Cboe to respond to Samuel's individual Subpoena. Indeed, enforcing the Subpoena would defeat the purpose of consolidation, which is to ensure that discovery in all the consolidated cases proceeds in an orderly fashion before a single court. This Court should quash the Subpoena, without prejudice to Samuel's ability to reissue a subpoena after

the JPML rules and in a manner that provides for compliance in the Northern District of Illinois. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

Cboe sought to reach an agreement on these issues during meet and confer calls with Samuel's counsel, but the parties were unable to reach a resolution.

## BACKGROUND

Cboe, through its subsidiaries, is the publisher of a measure known as the Cboe Volatility Index or "VIX," and operates the Cboe Exchange and Cboe Futures Exchange, which are exchanges for trading certain VIX-linked derivative products. In addition to publishing the VIX, Cboe also employs a process for determining the final settlement value of its expiring derivative products that is known as the Special Opening Quotation ("SOQ"). Samuel's action is a class action lawsuit alleging that John Doe defendants colluded with each other to manipulate the settlement value of the VIX in order to affect the settlement prices of derivative products linked to the VIX, in violation of the Sherman Act. *See, e.g.*, Exhibit 2 (*Samuel* Complaint) ¶¶ 8, 68-78.

To identify the John Doe defendants, Samuel alleged he would seek information from Cboe. *Id.* ¶ 11. After filing his complaint, Samuel sought permission on February 28, 2018, to conduct expedited discovery on non-party Cboe before the Rule 26(f) conference. Samuel argued that Cboe would face little prejudice because Cboe could "litigate any dispute in the Northern District of Illinois, the district of compliance." Letter Motion at 4, *Samuel v. Does*, No. 1:18-cv-1593 (S.D.N.Y. Feb. 28, 2018), ECF No. 5 (attached hereto as Exhibit 3). On March 13, the court permitted Samuel to serve the Subpoena, acknowledging that Cboe would be able to litigate any disputes in this district. *See* Order at 2, *Samuel v. Does*, No. 1:18-cv-1593 (S.D.N.Y. Mar. 13, 2018), ECF No. 6 (attached hereto as Exhibit 4).

On March 16, 2018, Samuel served on Cboe a Subpoena to Produce Documents. *See* Exhibit 1. Contrary to his representation to the issuing court, Samuel did not notice the Subpoena for compliance in Chicago. Instead, Samuel served Cboe in Delaware, Cboe's place of incorporation, and sought compliance in Radnor, Pennsylvania. *See id.*

The Subpoena demands that Cboe produce documents responsive to four separate requests for production:

- Documents sufficient to identify all transactions in SPX Options included in the calculation of each VIX Settlement Price through the SOQ between January 1, 2017, and February 9, 2018;

- Documents sufficient to identify all bid and ask quotes that were posted for SPX Options on the Cboe between January 14, 2018, and February 9, 2018;

- Documents sufficient to identify all transactions in VIX Options on the Cboe within forty-eight (48) hours prior to the completion of the SOQs that occurred between January 1, 2017, and February 9, 2018;

- Documents sufficient to identify all transactions in VIX Futures on the Cboe within forty-eight (48) hours prior to the completion of the SOQs that occurred between January 1, 2017, and February 9, 2018.

Samuel's case is not the only VIX-related case that has been filed. As of the date of this motion, there are eighteen cases pending in the Southern District of New York and the Northern District of Illinois containing common or similar allegations concerning manipulation of the VIX, manipulation of the settlement process for VIX derivatives traded at Cboe entities, and manipulation of other volatility related financial products. *See* Exhibit 5 (schedule of cases). Although Cboe is not named as a defendant in Samuel's lawsuit, Cboe has been named as a defendant in eleven of these cases.

After Samuel served the Subpoena, but before Cboe was required to comply, one plaintiff filed a motion before the JPML seeking to consolidate the cases into a single MDL proceeding. *See* Motion of Plaintiff Eric J. Levy, Living Trust UA Dated 1/21/10 *et al.*, *In re Chicago Bd.*

*Options Exch. Volatility Index Manipulation Antitrust Litig.*, MDL No. 2842 (J.P.M.L. filed Mar. 23, 2018), ECF No. 1.  All but two parties who filed responses to the motion have expressed support for consolidation of the cases in an MDL proceeding.  The MDL Panel has scheduled oral argument for May 31, 2018.  Cboe expects a decision by the JPML will issue shortly thereafter, in early June.

Samuel's Subpoena also is not the only effort to seek discovery from Cboe to date.  In a case pending before the Honorable Manish Shah that alleges similar manipulation and names John Doe defendants, *Atlantic Trading USA, LLC v. Does 1-100*, No. 18-cv-01754 (N.D. Ill. filed Mar. 9, 2018), plaintiff sought permission for leave to serve its own subpoena on Cboe.  That subpoena sought somewhat different information and covered an overlapping, but much more extensive, time period.  *See* Exhibit 6.  Judge Shah denied plaintiff's request without prejudice, noting that there were "good reasons to wait to see what will happen with the cases and potential efficiencies" before engaging in discovery.  Transcript of Proceedings at 13, *Atlantic Trading USA, LLC v. Does 1-100*, No. 18-cv-01754 (N.D. Ill. Apr. 5, 2018), ECF No. 20.[1]

Samuel's Subpoena listed a compliance date of April 13, 2018.  On March 26, 2018, Samuel's counsel agreed to an extension of time up to and including April 13 for Cboe to serve written objections to the Subpoena.  Cboe timely served its objections on April 13, objecting, among other grounds, that the Subpoena's proposed place of compliance is improper and that the Subpoena is unduly burdensome in light of the pending MDL motion and the multiple, overlapping discovery requests Cboe is likely to receive in the numerous filed cases.  *See* Exhibit 7 at 2-4.  The

---

[1] Separately, Samuel has moved to consolidate five cases filed in the Southern District of New York.  *See* Letter Motion, *Samuel v. Does*, No. 18-cv-1593 (S.D.N.Y. Mar. 20, 2018), ECF No. 8.  The court deferred any decision on the motion "[i]n light of the significant effect of the JPML's decision on any case management."  Order, *Samuel v. Does*, No. 18-cv-1593 (S.D.N.Y. Apr. 10, 2018), ECF No. 14.

parties met and conferred regarding the Subpoena on April 23, April 25, and May 4, 2018, but did not reach a resolution.

## ARGUMENT

Federal Rule of Civil Procedure 45 restricts the scope of discovery sought from a third-party through a subpoena. Rule 45(c) permits a party to seek the production of documents only "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). A court must modify or quash a subpoena that, among other things, "requires a person to comply beyond the geographical limits specified in Rule 45(c)" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv). To determine whether a subpoena imposes an undue burden, courts must evaluate whether the "burden of compliance . . . would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). Further, because non-parties have "different expectations" from parties to the litigation, courts give "special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013).

## I.     This Court Is the Appropriate Venue to Consider Cboe's Motion To Quash.

As a threshold matter, this Court—not the Eastern District of Pennsylvania, which is improperly identified on the subpoena as the place of compliance—is the appropriate venue to adjudicate Cboe's motion to quash, for three reasons. First, Samuel has already consented to litigating a motion to quash in this Court. Second, the Southern District of New York has already ruled that a motion to quash should be adjudicated in this Court. Third, Federal Rule of Civil Procedure 45(d)(3)(A) prescribes that this Court should adjudicate the motion to quash.

First, before the Southern District of New York, Samuel recognized that this district is the appropriate place of compliance. Exhibit 3 at 4. Therefore, Samuel has acquiesced to this Court's

authority to decide the motion to quash and has waived any argument for a different forum. His waiver is enforceable. *See, e.g.*, *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. July 22, 2014) (holding that provisions of Rule 45 are non-jurisdictional, and hence waivable).

Second, the issuing court found special circumstances existed to permit Samuel to serve expedited discovery while expressly stating that based on Samuel's representation, Cboe would have the opportunity to litigate any objections in the Northern District of Illinois. *See* Exhibit 4 at 2. The Southern District of New York issuing court's order therefore presupposes that this Court will adjudicate any motion to quash. If Samuel now argues that this motion to quash should be adjudicated by the Eastern District of Pennsylvania, he would be collaterally attacking the issuing court's order.

Third, even setting aside Samuel's waiver and the issuing court's ruling, the Federal Rules prescribe that this Court is the appropriate venue to adjudicate the motion to quash. Under the Federal Rules, motions to quash are adjudicated by the court "for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). The "district where compliance is required" is the district where compliance is *properly* required under Rule 45(c) (in this case the Northern District of Illinois), not the district improperly identified on the Subpoena as the place of compliance (in this case the Eastern District of Pennsylvania).

The analysis in *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823 (C.D. Ill. July 7, 2017), is instructive here. In *Raap*, a litigant served a subpoena on the Bank of Springfield in Springfield, Illinois, commanding it to produce documents in Wisconsin. The Bank of Springfield filed a motion to quash in the Central District of Illinois, where it is located. The Central District of Illinois held that it could adjudicate the motion to quash under Rule 45(d)(3)(A),

7

and ultimately granted the motion. The court explained that the "district where compliance is required" under Rule 45(d)(3)(A) is the "location of the subpoenaed person or entity"—that is, the "place of compliance" mandated by Rule 45(c). *Id.* The court pointed to the applicable Advisory Committee note, which provides: "To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that the motions be made in the court in which compliance is required under Rule 45(c)." *Id.* The court found that the "purpose of protecting nonparties is defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum." *Id.* It noted that "the phrase, 'the court in which compliance is required under Rule 45(c)' contained in the Advisory Committee Notes also supports this interpretation," because "Rule 45(c) requires that the subpoena command production within 100 miles of where the person resides, is employed, or regularly transacts business in person." Thus, the court found that "the court in which compliance is required under Rule 45(c) is the court in the district within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person." *Id.* At least two other courts in other circuits have reached the same conclusion. *See Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014); *XTO Energy, Inc. v. ATD, LLC*, No. 14-1021, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016).[2]

---

[2] At least two courts in other circuits take a contrary view, finding the place the subpoena commands compliance conclusive for purposes of deciding which court should decide the motion to quash. *See U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11–cv–2843, 2014 WL 4055372, at *1 (N.D. Tex. Aug. 15, 2014); *Semex Alliance v. Elite Dairy Genomics, LLC*, No. 3:14–cv–87, 2014 WL 1576917, at *1 (S.D. Ohio Apr. 18, 2014). This Court should not adopt that reasoning for two reasons. First, Samuel expressly admitted before the Southern District of

Here, the "district where compliance is required" under Rule 45(d)(3)(A) should be the Northern District of Illinois. Cboe's principal place of business—the place that Cboe "regularly transacts business" and where the employees who would compile the information are employed—is Chicago. Fed. R. Civ. P. 45(c)(2)(A). Courts generally refer to a corporation's headquarters when determining where the corporation can be commanded to comply with a subpoena. *See, e.g.*, *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 628 (C.D. Cal. 2018) (concluding that Google's place of compliance was properly where "its headquarters" were located, where its "custodians of records reside, are employed, and regularly transact business in person," and where its custodians "produced records in response to the Subpoena"); *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 15-MC-94003, 2015 WL 5934760, at *2 (D. Mass. June 18, 2015) (explaining that company's headquarters was place of compliance), *report and recommendation adopted by* 2015 WL 5944286 (D. Mass. Aug. 27, 2015). Cboe's headquarters is in Chicago and it regularly transacts business here. This Court is the proper court to adjudicate the motion to quash.

## II. The Subpoena Improperly Requires Cboe To Comply More Than 100-Miles From Chicago, Where Cboe Regularly Transacts Business.

Because Samuel noticed an improper place of compliance, this Court should quash the Subpoena.

Samuel's litigation position in the Southern District of New York—and the Southern District of New York issuing court's ruling noting Samuel's representation—resolve this issue.

_____

New York that the place of compliance is this district, and that court's order found special circumstances to permit Samuel to serve early discovery with that understanding in mind. Second, that reading of Rule 45 would permit the party serving a subpoena to require a responding party to litigate a subpoena in a far-flung district simply by noticing a location for compliance there. That result undermines the purpose of the 2013 amendments to Rule 45: "[t]o protect local nonparties" by requiring "local resolution of disputes about subpoenas" under Rule 45(c) and (d). Fed. R. Civ. P. 45 advisory committee's note; *cf. id.* ("The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.").

As previously explained, Samuel has already conceded that this Court is the proper place of compliance. Requiring Cboe to comply with the subpoena in Pennsylvania would directly conflict with Samuel's own representation. Moreover, the Subpoena likewise fails to comply with the order authorizing its issuance—which recognized that the Northern District of Illinois would be the place of compliance and would provide Cboe with a location to litigate any disputes concerning the Subpoena. *See* Exhibit 4 at 2.

Even without Samuel's concession in the Southern District of New York and the resulting Order, Pennsylvania would be an improper "place of compliance" under Rule 45. Cboe "regularly transacts business in person" in Chicago. Fed. R. Civ. P. 45(c)(1)(A). Radnor, Pennsylvania is more than 100 miles from Chicago and therefore violates Rule 45.

To be sure, Samuel has noticed the Subpoena for compliance within 100 miles of Cboe's *place of incorporation—i.e.*, Delaware. But that fact is irrelevant to the Rule 45 analysis. Courts quash subpoenas, and conclude that a corporation's place of incorporation is not a proper place of compliance, when the subpoena seeks documents in a district in which the corporate employees who will exercise control over the documents for the purpose of responding are not located or seeks testimony from individuals who do not work in the district. For instance, in *Tele Draulic, Inc. v. Hetronic International, Inc.*, Misc. No. 16-108-SLR, 2016 WL 3606775, at *3 (D. Del. June 30, 2016), a document production subpoena was served on a Swedish company incorporated in Delaware. The question, as framed by the court, was whether the company retained any "employee or other legal representative" located in that district "who possesses a sufficient degree of control over corporate documents maintained outside the court's jurisdiction to make it appropriate to enforce the production subpoena." 2016 WL 3606775, at *3. Because the party serving the subpoena had not provided any evidence that Tele Draulic "has an employee or legal representative

located within the court's jurisdiction with control over the responsive documents," the court quashed the subpoena. *Id.*; *accord W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 09-126-SLR, 2010 WL 181088, at *2 (D. Del. Jan. 19, 2010) (quashing subpoena directed at a Delaware corporation with its principle place of business in New York City, New York because the company "demonstrated that its employees work more than 100 miles from Wilmington").

Similarly, the Cboe employees with control over the data and documents Samuel seeks, and who would be gathering, compiling, and reviewing the documents, are not located in Samuel's proposed district of compliance. Instead, they work at Cboe's headquarters in Chicago. The Subpoena should be quashed because it identifies an improper place of compliance.

### III. The Subpoena Is Unduly Burdensome Given The Pending Motion Before The JPML To Coordinate These Cases.

The Subpoena should also be quashed for the independent reason that forcing Cboe to respond to discovery in one individual case, before the JPML panel rules, would unduly burden Cboe. An undue burden exists when the "burden of compliance . . . exceed[s] the benefit of production of the material sought." *Nw. Mem'l Hosp.*, 362 F.3d at 927. Cboe is named as a defendant in eleven cases. And plaintiffs in each of the remaining seven cases that, like Samuel's, name only John Doe defendants allege that they intend to issue subpoenas to or seek discovery from Cboe.[3]

---

[3] *See* Class Action Complaint ¶ 11 & n.7, *Quint v. DRW Holdings, LLC*, No. 1:18-cv-01980 (S.D.N.Y. filed Mar. 5, 2018), ECF No. 1; Class Action Complaint ¶ 7, *Musso v. John Does*, No. 1:18-cv-2269 (S.D.N.Y. filed Mar. 14, 2018), ECF No. 1; Class Action Complaint ¶ 19, *Levy v. John Does*, No. 1:18-cv-2552 (S.D.N.Y. filed Mar. 22, 2018), ECF No. 1; Class Action Complaint ¶¶ 13, 92, *Barry v. John Does*, No. 1:18-cv-02615 (S.D.N.Y. filed Mar. 23, 2018), ECF No. 1; Class Action Complaint ¶ 18, *Sanduski v. John Does*, No. 1:18-cv-02552 (S.D.N.Y. filed Apr. 26, 2018), ECF No. 1.

Samuel's Subpoena therefore is only the first of what will be several requests for discovery issued to Cboe seeking information plaintiffs allege is necessary to identify John Doe defendants. Indeed, there already has been an effort to subject Cboe to additional, overlapping but not identical discovery. Plaintiff in another case in this district (*Atlantic Trading*) sought leave to conduct expedited discovery. Atlantic Trading's proposed subpoena sought overlapping but distinct information from Cboe. *Compare* Exhibit 1 (Samuel's subpoena), *with* Exhibit 6 (Atlantic Trading's proposed subpoena). Thus, the information Cboe would potentially produce in response to the Subpoena will not suffice for all plaintiffs.

It is unduly burdensome to require Cboe to respond to the Subpoena, and it is inefficient to ask this Court to litigate substantive issues concerning the Subpoena's scope, when Cboe will face additional requests for similar documents that may be framed differently or seek documents covering different time periods (as it already has). Indeed, requiring Cboe to comply with the Subpoena would undermine the entire purpose of the JPML, which is to consolidate cases so as to ensure that a single court can preside over and eliminate duplicative discovery. *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 903 (2015) (noting that consolidation by the JPML "aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts'") (quoting Manual for Complex Litigation § 20.131, at 220 (4th ed. 2004)). After the JPML rules, and if these cases are transferred and coordinated, the transferee court can coordinate discovery among *all* plaintiffs so that Cboe is required to respond to only a single subpoena seeking information covering requests from all plaintiffs. Even if the cases are not consolidated or coordinated by the JPML, it is likely that the cases will be consolidated in a single court in each of the Northern District of Illinois and the Southern District of New York, each of whom will coordinate discovery

in the cases pending in each district. In either situation, Cboe will be able to more efficiently respond to discovery requests from all plaintiffs, and will not be forced to duplicate its efforts.

Indeed, the clear inefficiency of proceeding before the JPML rules on consolidation is reflected in the fact that, even if Samuel proceeds with his Subpoena here, the court to which the JPML transfers these cases would be free to reconsider rulings made before transfer. This would include rulings related to the scope of the Subpoena. *See, e.g.*, Manual for Complex Litigation, § 20.132, at 222 (4th ed. 2004) ("The transferee judge may vacate or modify any order of a transferor court, including protective orders."); *see also In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 491 (C.D. Cal. 2012) (concluding that the discretion to depart from the law of the case for changed circumstances is met where cases "have been consolidated and transferred to [a single court] for purposes of uniform litigation" by the JPML).

Both Cboe's and the courts' resources will be conserved if the Subpoena is quashed until the JPML rules. As Judge Shah recognized, there are "good reasons to wait to see what will happen with the cases and potential efficiencies" before engaging in discovery. Transcript of Proceedings at 13, *Atlantic Trading USA, LLC v. Does 1-100*, No. 18-cv-01754 (N.D. Ill. Apr. 5, 2018), ECF No. 20. The Southern District of New York similarly recognized the efficiencies gained by awaiting the JPML's ruling; that court deferred any decision on Samuel's motion to consolidate those cases "[i]n light of the significant effect of the JPML's decision on any case management." Order, *Samuel v. Does*, No. 18-cv-1593 (S.D.N.Y. Apr. 10, 2018), ECF No. 14. Any brief delay in obtaining the materials will not prejudice Samuel, and does not outweigh the burden imposed on Cboe. *Cf., e.g., Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 372

(S.D.N.Y. 2013) ("[S]hort delays" caused by suspending proceedings pending an MDL Panel determination of "whether to transfer a case usually do not prejudice the plaintiff.").

Requiring Cboe to comply now, without knowing whether its efforts will be for naught or must be duplicated after the JPML rules, is unduly burdensome. The Subpoena should be quashed, without prejudice to Samuel's ability to pursue it in a proper district of compliance after the JPML rules.[4]

**CONCLUSION**

For the foregoing reasons, Cboe requests that the Court quash Samuel's subpoena.

Dated: May 4, 2018

Respectfully submitted,

/s/ Reid J. Schar

Reid J. Schar
Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
rschar@jenner.com
gboyle@jenner.com

*Counsel for Respondent Cboe Global Markets, Inc.*

---

[4] Cboe timely objected on additional grounds in the written objections it served on Samuel's counsel. *See* Exhibit 8; Fed. R. Civ. P. 45(d)(2)(B). In the interest of judicial economy, Cboe has not yet moved to quash the Subpoena on any additional grounds. In any event, Cboe is not obligated to comply with the Subpoena until a court in the district where compliance is required issues an order in response to any motion by Samuel to compel production. Fed. R. Civ. P. 45(d)(2)(B)(ii); *see, e.g.*, *Exodus Refugee Immigration, Inc. v. Pence*, No. 1:15-cv-1858-TWP-DKL, 2016 WL 3917094, at *4 (S.D. Ind. July 20, 2016) ("[H]aving timely served its objections to the subpoena, [the recipient] was no longer under any obligation to produce the requested documents—not unless and until ordered to do so by the Court."); *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015) ("Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order.").